1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TIMOTHY BRYAN BROOKS,

11          Plaintiff,              No. CIV S-02-2166 MCE EFB P

12      vs.

13   CALIFORNIA DEPARTMENT OF
     CORRECTIONS, et al.,
14
            Defendants.              FINDINGS AND RECOMMENDATIONS
15   _____/

16          Plaintiff is a prisoner without counsel suing for alleged civil rights violations.  *See* 42

17   U.S.C. § 1983.  This action proceeds on the October 2, 2003, verified second amended complaint

18   in which plaintiff claims that defendant Captain Kirsten Millingar was deliberately indifferent to

19   his need for safety and defendants Ted Yin Hui and D. Harman were deliberately indifferent to

20   his serious medical needs.  He alleges the following: (1) defendant Millingar knew that plaintiff

21   was housed in a particularly violent unit and should have prevented other prisoners from

22   attacking plaintiff with boiling water and clubs; (2) defendant Harman knew plaintiff required

23   medical treatment following the attack, but placed him in administrative segregation without

24   medication instead of in the hospital; (3) defendant Yin Hui knew plaintiff required pain

25   medication and care for his swollen knee and elbow but failed to take reasonable measures to

26   ////

provide these things.  On May 12, 2006, plaintiff moved for summary judgment.[1]  On October

10, 2006, defendants opposed plaintiff's motion and cross-moved for summary judgment.  For

the reasons explained below, the court finds that there is no genuine issue dispute over any

material issue of fact and defendants are entitled to summary judgment.

**I.     Facts**

At all times relevant to this action, plaintiff was a prisoner confined at Deuel Vocational

Institution ("DVI").  Defendant Millingar was a Facility Captain, defendant Harman was a

Correctional Lieutenant and defendant Yin Hui was a physician at DVI.

On July 23, 2002, plaintiff was housed in a unit known by prisoners and staff as "Z"

dorm.  Second Amended Complaint ("SAC"), at 8.  The unit's appellation referred to the high

concentration of extremely violent prisoners housed there.  Declaration of Plaintiff in Support of

Motion for Summary Judgment ("Pl.'s Decl."), at 6; Ex. C to Pl.'s Mot. for Summ. J.  At around

2:30 a.m., plaintiff was scalded with hot water while he slept in his "Z" dorm cell, causing him

to fall from the third-level bunk bed.  Declaration of Millingar ("Millingar Decl."), at ¶ 2.  At

first, plaintiff told prison staff that he had spilled hot water on himself while making coffee.  Exs.

C & D to Defs.' Mot.  He denied having enemies at DVI.  Ex. C to Defs.' Mot.  The prison's

Investigative Service Unit determined that two other prisoners, nowhere identified in the record,

put hot water on top of a locker next to plaintiff's bunk and the water fell on plaintiff while he

slept.  Millingar Decl., at ¶ 4.  The motive was plaintiff's failure to pay a drug debt.  At the time,

plaintiff had no documented enemies at DVI, and to Millingar's knowledge, plaintiff had no

undocumented enemies and never expressed any concern for his safety at DVI.  Millingar Decl.,

at ¶¶ 4, 5.

////

---

[1]  In this motion, plaintiff alleges that defendant Millingar knew plaintiff was not so
dangerous as to warrant placing him in the unit where he was attacked, but housed him there
anyway.  This ground for relief was not alleged in the complaint.  Therefore, the court does not
consider it.

1    As a result of this incident, plaintiff had severe burns on the back of his neck, skin

2    sloughing to the left chest, neck and back, a chipped front tooth, a laceration to the forehead and

3    injuries to his left knee and elbow.  Exs. C, F, I, L to Defs.' Mot.  Prison doctors cleaned and

4    dressed the injuries to plaintiff's head, back and neck and referred him to Doctor's Hospital of

5    Manteca ("DHM").  Exs. F, G, I to Defs.' Mot.  Medical staff at DHM cleaned plaintiff's

6    lacerations and burns, stapled the cuts, applied a topical antibiotic, and performed a CT scan of

7    plaintiff's head.  Ex. J to Defs.' Mot. at unnumbered page 6.  The CT scan showed no

8    abnormalities.  *Id.*  The aftercare instructions were to keep the wounds clean and dry and to

9    remove the staples within 6-8 days.  *Id.*, at unnumbered page 2.  Plaintiff was discharged within

10   a few hours.  *Id.*, at unnumbered pages 1, 7.  Defendants submit evidence that medical staff at

11   DHM did not recommend or even mention that plaintiff should be monitored or have medication.

12   *Id.*  Plaintiff asserts that he needed pain medication and that someone placed the "treatment

13   sheet from the Manteca Hospital in plaintiff's medical history."  SAC at unnumbered page 4.

14   When plaintiff returned from the hospital, medical staff examined him and determined that he

15   should have a one-day "lay in" and should be seen in six to eight days to remove the staples.

16   The staff also referred him for a dental consultation for the chipped tooth.  Ex. H to Defs.' Mot.

17   Prison officials determined that, as the victim of an attack, plaintiff posed a threat to the

18   safety and security of the institution.  Ex. C to Defs.' Mot.;  Harman Decl., at ¶ 6.  Defendant

19   Harman therefore directed that plaintiff be placed in administrative segregation under the

20   authority of Cal. Code Regs. tit. 15, § 3335(a).  Ex. C to Defs.' Mot.  Prison officials sought to

21   protect him from additional assaults or threats, and to protect prison staff and other prisoners

22   from the possibility that plaintiff would seek reprisal, and to ensure the integrity of the

23   investigation into the attack.  Harman Decl., at ¶ 6.  Defendant Harman asserts that before

24   deciding to place plaintiff in administrative segregation, he reviewed the opinions and

25   recommendations of doctors at DVI and at Doctors' Medical Hospital in order to ensure that

26   plaintiff did not require medical care that warranted hospitalizing him.  Harman Decl., at ¶ 7.

1   The day after the attack, plaintiff saw a dentist at the prison.  Ex. K to Defs.' Mot.  Dental

2   staff did not note any complaints of pain.  *Id.*  They took x-rays of the broken tooth and directed

3   plaintiff to return for a follow-up appointment.  *Id.*  There is a notation on the dental record that

4   on August 27, 2002, plaintiff did not appear for his appointment.  *Id.*

5   On August 8, 2002, Dr. Hui saw plaintiff for a follow-up appointment, during which Dr.

6   Hui removed the staples.  Ex. L to Defs.' Mot. at unnumbered page 1.  Plaintiff had a headache

7   and pain in his left knee and left elbow.  *Id.*  Dr. Hui noted that plaintiff had not been

8   experiencing vomiting, he was alert, but his left elbow and left knee were swollen.  *Id.*  Plaintiff

9   had slightly less than full extension in his left knee but had  full range of motion.  *Id.*  Dr. Hui

10  noted that the burn wounds were healing with decreased skin pigmentation.  *Id.*  Dr. Yin Hui

11  prescribed medicine for plaintiff's headache, ordered x-rays for plaintiff's left knee and elbow,

12  and referred plaintiff to optometry for glasses.  Ex. L to Defs.' Mot. at unnumbered page 1-2.

13  Dr. Hui concluded that, at that point, it did not appear that plaintiff required additional care.

14  Declaration of Dr. Hui at ¶ 7.  Plaintiff did not complain of excessive pain and his burns had

15  healed with no complications.  *Id.*  The x-rays Dr. Hui ordered showed no evidence of bone

16  damage to plaintiff's left knee or elbow and the examination showed no ligament damage.  *Id.*

17  Therefore, Dr. Hui was of the opinion that plaintiff's knee and elbow injuries were of the soft

18  tissue and would heal over time.  *Id.*

19  On November 14, 2002, plaintiff saw a dentist for his chipped tooth.  Ex. O to Defs.'

20  Mot. at unnumbered page 1.  The dental record shows that staff determined that the chipped

21  tooth was "asymptomatic."  *Id.*  Palpation of the gingiva and probing of the tooth produced no

22  "pain or discomfort," or "sensitivity."  *Id.*  Plaintiff refused to have the chipped tooth extracted.

23  Ex. O to Defs.' Mot. at unnumbered page 2.

24  On January 28, 2003, plaintiff was examined by a medical technical assistant before

25  transfer to the administrative segregation unit in a different prison.  Ex. M to Defs.' Mot. at

26  unnumbered page 1.  Plaintiff denied having medical problems.  *Id.*

4

1 **II.      Summary Judgment Standard**

2         Summary judgment is appropriate when there is no genuine issue of material fact and the

3 movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v.*

4 *Catrett*, 477 U.S. 317, 322 (1986).[2]  The standards under Rule 56 to determine whether there is a

5 "genuine issue of material fact" are well established:

6                 [T]he Supreme Court, by clarifying what the non-moving party
                must do to withstand a motion for summary judgment, has
7                 increased the utility of summary judgment. First, the Court has
                made clear that if the nonmoving party will bear the burden of
8                 proof at trial as to an element essential to its case, and that party
                fails to make a showing sufficient to establish a genuine dispute of
9                 fact with respect to the existence of that element, then summary
                judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S.
10                317 (1986).  Second, to withstand a motion for summary judgment,
                the non-moving party must show that there are "genuine factual
11                issues that properly can be resolved only by a finder of fact
                because they may reasonably be resolved in favor of either party."
12                *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis
                added).  Finally, if the factual context makes the non-moving
13                party's claim implausible, that party must come forward with more
                persuasive evidence than would otherwise be necessary to show
14                that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v.*
                *Zenith Radio Corp.*, 475 U.S. 574 (1986).  No longer can it be
15                argued that *any disagreement* about a material issue of fact
                precludes the use of summary judgment.

16

17 *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert.*

18 *denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added).  In short, there is no

19 "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to

20 establish the existence of an element essential to that party's case, and on which that party will

21 bear the burden of proof at trial."  *Grimes v. City and Country of San Francisco*, 951 F.2d 236,

22 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).  There can be no genuine issue as to any

23 material fact where there is a complete failure of proof as to an essential element of the

24
        ───────────────────────────
25        [2]  On October 5, 2004, the court informed plaintiff of the requirements for opposing a
motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154
26 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v.*
*Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

1   nonmoving party's case because all other facts are thereby rendered immaterial.  *Celotex,* 477

2   U.S. at 323.

3          With these standards in mind, it is important to note that plaintiff bears the burden of

4   proof at trial over the issue raised on this motion, i.e., whether the defendant acted with

5   deliberate indifference to the plaintiff's safety.  Equally important is that "deliberate

6   indifference" is an essential element of plaintiff's cause of action.  Therefore, to withstand

7   defendant's motion, plaintiff may not rest on the mere allegations or denials of his pleadings.  He

8   must demonstrate a genuine issue for trial.  *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142

9   (9th Cir. 1989).  He must rely on evidence based upon which a fair-minded jury "could return a

10  verdict for [him] on the evidence presented."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248,

11  252.

12         "As to materiality, the substantive law will identify which facts are material.  Only

13  disputes over facts that might affect the outcome of the suit under the governing law will

14  properly preclude the entry of summary judgment."  *Id.* at 248.  Here, plaintiff's action arises

15  under 42 U.S.C. Section 1983 and the Eighth Amendment.  To prevail at trial, he must prove that

16  the defendant deprived him of his Eighth Amendment rights while acting under color of state

17  law.  Plaintiff has the initial burden of showing by a preponderance of competent evidence that

18  the defendants knew of plaintiff's serious medical needs but failed to take reasonable measures

19  to treat it.  *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Estelle v. Gamble*, 429 U.S.

20  97, 106 (1976).  But defendants have the burden of proving that they were unaware of the risk, or

21  if they knew of it, that they responded reasonably even if the harm nevertheless occurred.

22  *Farmer*, 511 U.S. at 844.  As discussed below, the evidence fails to demonstrate a genuine

23  dispute about whether defendant Millingar was deliberately indifferent to plaintiff's need for

24  safety or that defendants Yin Hui or Harman were deliberately indifferent to plaintiff's serious

25  medical needs.

26  ////

III.    **Analysis**

Plaintiff claims that defendant Millingar was deliberately indifferent to his safety by failing to prevent the hot water attack and that defendants Yin Hui and Harman were deliberately indifferent to his serious medical needs resulting from the attack.  He faults defendant Millingar for not preventing five men from entering his cell with clubs and a pot of boiling water.  Pl.'s Mot. for Summ. J. at 1.  He faults defendant Harman for placing him in administrative segregation without medication instead of in the hospital, where necessary care was available. *Id.* at 3.  Finally, he faults Yin Hui for failing to provide adequate pain medication and treatment for a crushed knee, elbow, face plate and chipped tooth.  *Id.* at 3-4.  All defendants assert that plaintiff has not adduced evidence that would prove the allegations against them.  Defendant Millingar asserts that plaintiff cannot prove that she knew plaintiff was at risk of attack by other prisoners.  Defendant Yin Hui asserts that plaintiff cannot prove that he failed to take reasonable measures to treat plaintiff's injuries.  Defendant Harman asserts that plaintiff cannot show that it was unreasonable in light of plaintiff's injuries, to place him in administrative segregation following the attack.

**A.  Safety Concerns**

Plaintiff alleges that Millingar obviously failed to protect him because "the attack was less than 30 feet from the catwalk with the armed guard who claimed not to see the 5 big black guys carrying prison made clubs and a pot of boiled water attack plaintiff while he slept on the top rack of a triple bunk . . . ."  Pl.'s Mot. for Summ. J. at 2.

The Eighth Amendment requires that the conditions of a prisoner's confinement, even if harsh, have some legitimate penological purpose.  *See Hudson v. Palmer*, 468 U.S. 517, 584 (1984); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  It is important to bear in mind that, "having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct," and "having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state

1    of nature take its course." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Simply stated, the

2    Eighth Amendment's prohibition on cruel and unusual punishments imposes on prison officials

3    "a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833.  Prison

4    officials violate the prohibition on cruel and unusual punishments if they are deliberately

5    indifferent to a substantial risk of harm at the hands of other prisoners. *Id.* at 837.  To be

6    deliberately indifferent, a prison official must know of, or infer from the circumstances, a

7    substantial risk of harm, yet fail to take reasonable actions to mitigate or eliminate that risk. *Id.*

8    at 837.

9          Plaintiff has submitted the declarations of three prisoners showing that "Z" dorm is

10   known as the "zoo" because most of the prisoners housed there are very difficult to control.  But

11   he has not submitted any evidence that defendant Milligard knew that plaintiff himself was at

12   substantial risk of an attack and failed to take reasonable measures to protect him.  Milligard has

13   submitted evidence that plaintiff had no documented enemies and she did not know of any

14   undocumented enemies.  Plaintiff at first claimed that he spilled hot water on himself, suggesting

15   that he wanted to conceal from prison officials whatever risk of harm in fact existed.  It was

16   prison officials' decision to investigate the matter that resulted in the formal determination that

17   plaintiff was in fact attacked and that the motive was plaintiff's failure to pay a drug debt.

18   Plaintiff submits no evidence that Milligard knew plaintiff owed money to other prisoners for

19   any reason, much less for contraband.  Nor does he submit evidence that Milligard failed to take

20   reasonable security measures given the concentration of extremely violent prisoners in that unit.

21   Furthermore, the attack occurred at 2:30 a.m., when prisoners presumably were locked in their

22   cells, an inherently secure situation as long as prisoners are compatibly housed.  Neither party

23   submits evidence concerning the identity of the prisoners who put the water near plaintiff's

24   bunk.  Plaintiff alleges that his attackers entered his cell during the night.  Absent a serious

25   security breach, this is an unlikely turn of events. There is no evidence that plaintiff's cell was

26   not properly secured or that if it was, these prisoners were able to circumvent that security.

1    There is simply no evidence on which a reasonable jury could conclude that Milligard

2    knew that plaintiff was any more likely to be subject to an attack than other prisoners with no

3    known enemies.  Therefore, defendant Milligard is entitled to summary judgment.

4    **B.  Medical Concerns**

5    Plaintiff asserts that Harman placed plaintiff into administrative segregation without

6    providing plaintiff his prescribed medication and that he repeatedly requested pain medication

7    while in administrative segregation, but Harman ignored the requests.  With respect to defendant

8    Dr. Yin Hui, plaintiff alleges that on August 8, 2002, this defendant violated plaintiff's Eighth

9    Amendment rights,

> by inadequate medical care in that Dr. Ted Yin-Hui had in his power the
> individual responsibility for obtaining or providing medical care that Yin-Hui
> knew this plaintiff needed to eliminate substantial risk of serious harm, but
> deliberately disregarded the risk by failing to take reasonable measures resulting
> in avoidable persistent sever pain or avoidable substantial personal injury."

13   SAC at unnumbered page 5.  Plaintiff also asserts that as a result of the chip, he suffered severe

14   pain because a root was exposed and defendant Yin Hui ignored his pain.  SAC at unnumbered

15   page 5.

16   Prison officials violate the Eighth Amendment when they engage in "acts or omissions

17   sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v.*

18   *Gamble*, 429 U.S. 97, 106 (1976).  A prison official is deliberately indifferent when he knows of

19   and disregards a risk of injury or harm that "is not one that today's society chooses to tolerate."

20   *See Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

21   The official must "be aware of the facts from which the inference could be drawn that a

22   substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S.

23   at 837.

24   Deliberate indifference "may be manifested in two ways. It may appear when prison

25   officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the

26   way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d

390, 394 (9th Cir. 1988).  When prison medical personnel act based on "a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law." *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996).  Prison officials provide constitutionally inadequate care when they know that a particular course of treatment is ineffective, but they do not alter it in an attempt to improve treatment.  *See Jett v. Penner*, 439 F.3d 1091, 1097-1098 (9th Cir. 2006).

    With respect to plaintiff's claims against Harman, it is undisputed that Harman is not a doctor and that he decided to place plaintiff into administrative segregation.  Harman submits evidence that he based his decision on the need to minimize the risk that this incident could lead to other attacks against prisoners and staff.  Plaintiff submits no evidence to the contrary.  Even if, for purposes of Harman's motion, the court draws the inference that defendant Harman was responsible for ensuring that plaintiff received medication immediately upon being placed in administrative segregation, this does not help plaintiff.  Defendants submit evidence that the discharge orders from DHM included no recommendation of medication.  Plaintiff has not submitted any prison records showing that he should have received medication, but he alleges that someone placed the "treatment sheet from the Manteca Hospital in plaintiff's medical history."  SAC, Continuations Sheet, first unnumbered page.  There is no evidence that defendant Harman misplaced the sheet or that he knew someone else did but failed to take reasonable measures to find it.  In support of his assertion that defendant Harman ignored his complaints of severe pain, plaintiff submits copies of grievance forms dated July 26, 2002, and August 6, 2002, complaining of severe pain and requesting medication for it.  But the forms do not have a log number or any other marking showing that plaintiff submitted it to prison officials.[3]  Even if he did, as he testified in his sworn declaration in support of his motion for

_____

[3] It is worth noting here that the court found that plaintiff exhausted these claims not because he pursued his grievance to the Director's Level of Review, but because plaintiff

1   summary judgment, there is no evidence that defendant Harman knew of plaintiff's complaints

2   but ignored them.  There is no evidence on which a reasonable jury could rely to conclude that

3   defendant Harman was aware of but deliberately indifferent to plaintiff's medical needs.

4   Therefore, defendant Harman is entitled to summary judgment.

5        Plaintiff's claim against Yin Hui, liberally construed, alleges that defendant Yin Hui

6   knew of the grievances plaintiff asserts he submitted, yet failed to take reasonable measures to

7   alleviate plaintiff's pain.  The evidence fails to demonstrate a genuine dispute over this claim.

8   For the same reason the court cannot find a genuine dispute that Harman knew of the grievances,

9   the court cannot find a genuine dispute that defendant Yin Hui knew of them.  Even if, for

10  purposes of defendant Yin Hui's motion, the court infers that plaintiff was in excruciating pain

11  and requested treatment therefor, there is no evidence that defendant Yin Hui knew plaintiff was

12  not receiving pain medication until August 3, 2002, when, as plaintiff alleges, he prescribed such

13  medication.

14       With respect to plaintiff's chipped tooth, it is undisputed that plaintiff saw a dentist the

15  day after the attack.  Defendant Yin Hui has submitted evidence that plaintiff had a dental

16  examination, including an x-ray of the chipped tooth on July 24, 2002, and that although a

17  follow-up appointment was scheduled, plaintiff did not appear.  There is no documentary

18  evidence showing that plaintiff refused to leave his cell for this appointment.  It therefore is

19  reasonable to infer, for purposes of defendants' motion, that officers in administrative

20  segregation refused to escort plaintiff to this appointment.  But this does not help plaintiff

21  because there is no evidence that defendant Yin Hui knew this but failed to take reasonable

22  measures to have plaintiff escorted.  Furthermore, when plaintiff did appear for a dental

23  appointment, dental staff palpated and probed the tooth and surrounding tissue and found no

24  sensitivity.  They offered to extract the chipped tooth, but plaintiff refused.  On these facts, no

25

26  attempted to file grievances and prison staff ignored them.  *See* Findings and Recommendations
    filed January 11, 2005; Order filed February 15, 2005.

reasonable jury could conclude that plaintiff suffered severe pain from the chipped tooth and that

defendant Yin Hui knew this, yet failed to take reasonable measures to ensure that plaintiff

received care for it.  Therefore, defendant Yin Hui is entitled to summary judgment.

For all these reasons, it is hereby RECOMMENDED that:

1.  Plaintiff's May 12, 2006, motion for summary judgment be denied;

2.  The October 10, 2006, cross-motion for summary judgment by Millingar, Harman and

Hin Yui be granted and that judgment be entered in their favor.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after

being served with these findings and recommendations, any party may file written objections

with the court and serve a copy on all parties.  Such a document should be captioned "Objections

to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158

F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:   February 21, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE